Good morning, your honors. I'd like to please support Dan Budorick appearing on his own behalf, or my own behalf. I just wanted to make a few points before addressing any questions of the panel. First, I think it's important to keep in mind that a divorce proceeding is a unique proceeding in the civil action world. It's not customary or usual to be able to have third-party complaints in that, and I think if we look at the defendant's argument here, they're essentially saying that I should be bringing a third-party complaint against the Maneris in the divorce proceeding. As far as I know, in my review of the case law under the IMDMA, Illinois Marriage and Dissolution of Marriage Act, there is no provision that allows for that. I have seen some cases where you may be able to file a separate action and consolidate it, but that leaves us with the question of jurisdiction, and that's why we're here today, is jurisdiction. One other point I want to make is that this whole controversy was initiated by the Maneris transferring over $148,000 out of a joint account with my wife to a sole and separate account 65 days before my wife filed a petition for dissolution. The joint account was with whom? My wife and the Maneris. And who? Those three individuals, Your Honor. Well, I'm sort of confused about where were you on the list? I was not on the list, but under the Illinois Marriage Dissolution Act, property held in my wife's name is also joint property until it's determined by the court to be sole and separate property. Well, right, that's an issue for the divorce court to decide, whether these funds that were held in these accounts are marital property or not. That's not for us or for any federal court. Well, the issue is getting the property back. We can't name, or I can't name, the Maneris as a defendant in the divorce proceeding because they're not parties to the marriage. And that is the point. Once the property is determined to be property that I have possessory interest in, then we can bring it into the court and the court can say, all right, it's 60% husbands, 40% wife, 50-50, 80-20. Right. The divorce court has many options for dealing with that issue. If these funds were, I guess it's around $200,000 total, something in that ballpark. Correct. If the divorce court determines that that was marital property and needs to be divided 50-50 or some other apportionment, then the divorce court can adjust the financial settlement between you and your wife accordingly and be done with it. You don't need the Maneris in the suit. The divorce court has no jurisdiction over the Maneris to return the funds. That doesn't matter. The divorce court can adjust the property settlement between you and your soon-to-be ex-wife, if that proceeding ever wraps up, which I understand has been going on for quite some time. For a while, Your Honor, yes. Yes. So the divorce court can adjust the marital property order, the final disposition, to account for any diversion of marital funds outside of the marital estate. The judge doesn't have to claw back the money from the Maneris. All the judge needs to do is adjust the amount that your ex-wife, soon-to-be ex-wife, will get. As I pointed out in the brief, Your Honor, I addressed that issue to the divorce court, and the court's response was, they are not parties. You cannot get discovery from them. Right. So how am I to nail down exactly how much that money is? You can separately sue them. That's what I did. If you think that they've done something wrong. But this federal court can't interfere with an ongoing divorce proceeding. And that is my point exactly, Your Honor. A separate lawsuit. I filed a separate lawsuit, a tort action, against the Maneris to return the property. And that is my right. A separate lawsuit in state court. There's no jurisdiction over them in state court because the actions took place when they transferred the money from an account in Connecticut to another account in Connecticut. I mean, some of the other actions arguably took place here when they transferred money from the Schwab account back to Connecticut. But if you're saying that I should go sue them in the state court. That's what I'm saying. The federal court can't interfere with an ongoing divorce proceeding in state court. Again, I don't believe that. And it seems like you want to litigate this issue of whether these are marital funds in federal court. And that's a divorce issue. It's not that I want to do that, Your Honor. Oh, but we can't do it. And that's just the bottom line. We can't get involved in marital issues. And that's a marital issue. There's going to be a fight on how that money came to be, as you claim, part of yours or how it came to be your wife's. And we don't have that authority, power, that's not the job of the federal courts to be involved in determining marital assets. Your Honor, again, as I pointed out in the brief, if they had taken, say, my car and they moved it, it's still a tort of conversion. They've taken a piece of property that I have an ownership interest in. That is the tort. You had title to the car. It might have been a joint. It could have been my wife's. Once you have a determination by your divorce court, then you may be able to take that action somewhere. But you don't have that. It's your word that you have an interest in that property. Well, no, it's pursuant to statute. Look, that divorce court has to make that decision whether that's marital assets or not. We're not in the job of doing that. I understand your position, Your Honor. If I can address, I guess I'll do it on rebuttal. Thank you, Your Honor. May it please the Court, my name is Elizabeth Paul, and I represent the Appalese, Vincent, and Marilyn Minary. The goal of the domestic relations exception is to keep federal courts from becoming entangled in a realm that is particularly delicate, that is governed by state law and institutions, and in which intercourt conflicts should be kept to an absolute minimum. Indeed, one of the traditional concerns of federal courts in applying the domestic relations exception has been to prevent spouses from playing one court system against another. That is precisely what Mr. Brodark is attempting to do in this case. This litigation began a year and a half ago, and Mr. Brodark attempted to remove his divorce action to federal court on the eve of trial in that case by filing a federal complaint against his in-laws, the Minaries. The basis of Mr. Brodark's complaint is that his wife has allegedly provided certain funds to her parents, which they are alleged to be holding temporarily, so that said funds would be outside the subject of the marital property for the court to divide. That is an issue for the state court, not the federal courts, to resolve. Mr. Brodark's contention that the state court in his divorce action declined to exercise jurisdiction over his claims against the Minaries is simply not true. In the divorce case, Mr. Brodark issued certain subpoenas to certain financial institutions for the Minaries' records. The divorce court found that those subpoenas were overbroad in part and quashed them, but allowed Mr. Brodark to obtain discovery on any accounts in which his wife was named on the account. Mr. Brodark simply never moved to have his parents-in-law, the Minaries, named as respondents in discovery or as defendants in the divorce action, which he certainly could under the Illinois Code of Civil Procedures, Section 402, which governs respondents in discovery, and 405 and 406, which govern third-party defendants. So the divorce court has full plenary authority to adjudicate the issue of whether these are marital funds or not? Absolutely, Your Honor. And to demand an accounting and engage in some sort of remedy or issue some sort of remedy if it's determined that these are marital funds and were wrongfully transferred? Absolutely, Your Honor. And pursuant to the Illinois long-arm statute, the fact that the Minaries reside and are domiciled in Connecticut is beside the point. The Illinois divorce court could have jurisdiction over the Minaries pursuant to the Illinois long-arm statute. Moreover, even if Mr. Budarek had moved to bring the Minaries into the divorce case, either as respondents in discovery or as third-party defendants, and the trial court had denied him that relief, which is not the case, but which he argues is the case, the proper procedure would be for Mr. Budarek to appeal that decision to the Illinois appellate court, not to bring an independent suit in federal court, as this court held in Alpern v. Lee. And presumably, Mr. Budarek is aware of this procedure, not only because he's an attorney, but because he has filed two interlocutory appeals in his divorce proceeding to date. For all intents and purposes, Mr. Budarek is simply forum shopping for a court that will allow him unfettered access to the financial records of his parents-in-law. The domestic relations exception prevents Mr. Budarek from engaging in this type of forum shopping. I would like to turn briefly to Appley's motion for sanctions pursuant to Federal Rule of Appellate Procedure 38, which allows this court to award damages in single or double cost to an appellee when an appeal is frivolous. Last week, this court granted Appley's motion asking the court to take judicial notice of a motion recently filed by Mr. Budarek in his divorce proceeding, seeking to stay the trial in that proceeding pending the resolution of his federal claims. Mr. Budarek's motion exemplifies why sanctions are appropriate in this case. Before this court, Mr. Budarek has argued that his claims are not part of the domestic relations dispute between he and his wife. However, in state court, Mr. Budarek is arguing that it is imperative that the trial in the divorce proceeding not go forward on September 5, 2017 as scheduled unless and until his federal claims are resolved. He is clearly attempting to play one court against another. Moreover, this motion to stay the divorce trial, much like his initial attempt to remove his divorce case to federal court on the eve of trial, is proof that Mr. Budarek is pursuing these claims and this appeal for an improper purpose to delay his divorce trial. As this court held in Cooney v. Cassidy, Mr. Budarek may have caught one break with respect to sanctions in the district court, but this court should not be inclined to give him another. Accordingly, we believe that sanctions pursuant to federal rule of appellate procedure 38 are appropriate in this case, and we ask that this court affirm the district court's decision that it lacked subject matter jurisdiction over Mr. Budarek's claims pursuant to the well-established domestic relations exception. How long has this divorce case been pending? The divorce case was filed in March 2014, Your Honor. It was scheduled for trial in March 2016, and on the eve of trial is when Mr. Budarek attempted to remove that case to federal court by filing this case. So it's not dissolved yet. They're still married. Correct. The trial is currently scheduled for September 5 of this year. Thank you. Your Honor, I just want to clarify a few points. I've already asked the state court judge to allow us to name the Menaris as discovery defendants. She would not allow that. So when she says we have other options, the court told me they're not defendants, they will not be defendants, and that's why I named them in the federal court, because diversity seemed like the most logical way. My goal certainly is not to continue the divorce. Anybody who's been through a divorce knows the sooner you get it over, the better off you're going to be. That's for certain. And the better off your kids are going to be, which is more important. Secondly, she indicated, counsel indicated, that there was two interlocutory appeals. That is incorrect. There's only been one interlocutory appeal. And with regard to denial of naming them as a discovery defendant or another defendant, you can't appeal that order interlocutory. You'd have to appeal it after the case is over. And after that point in time, the asset is already gone, because the court has made a determination without that asset being subject to it. It's very similar to an estate distribution. Unless those assets are before the court to be distributed, you can't distribute them. And that's really all my efforts are, is to get the asset back. If the state court won't allow me to get discovery, to get that asset back, then it can't be divided amongst myself and my wife. I'm not trying anything to continue the trial. I'm trying to get an asset back. It's $148,000 that I didn't know about in a separate account that the Maneri said that they're transferring money into this joint account from, here in Illinois. I understand the court's position that if I should go sue them in the state court, I didn't believe that it was proper jurisdiction. If you're telling me that I have jurisdiction, then that's the argument I'll make down in the state court when I refile the action as a state court action. But I certainly didn't do anything improper. And the rule on Rule 38 is it's a frivolous appeal. The district court judge said there's no clear statement on the domestic relations action. And there's no existing Seventh Circuit case on this matter. It was not frivolous. It was done because I'm trying to return assets to an estate to have it divided. What relief are you seeking in this lawsuit? Conversion. In other words, returning the property and an account. An accounting, so I can find out how much has been transferred. There may be other funds, as I pointed out in the complaint and in the briefs. There's another check for $131,000 or, I don't know if it's a check or a wire transfer, for $31,000 that happened for one of my wife's other accounts that it never showed up anywhere else in all the volumes of paperwork that we have in the divorce proceeding. So I don't know how much. As well as cash being taken out of her account, our joint account, over the years. They're asking for sanctions. That's the last request here. You obviously oppose that. Obviously. I mean, again, under Rule 38 it says it's a frivolous appeal. It's not a frivolous appeal. The court said there's no clear statement. And I agree, there is no clear statement. That's why I filed a motion for reconsideration in the very beginning when the court issued its first sua sponte order. I was confused. How can you say that the divorce court won't take jurisdiction and then sue a person from another state who's domiciled in another state and say there's no jurisdiction? To me, it's incongruent. You have to be able to have jurisdiction over those people to get that property back here to the state so it can be divided. And I agree. 503 would provide for the division of that asset. Unless the court has any other questions. Thank you, Counsel. Thank you, Your Honor. The case will be taken under advisement.